

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

REBECCA BREAUX,                    §
                                   §
          Plaintiff,               §
                                   §
VS.                                §   NO. 4:12-CV-282-A
                                   §
ASC INDUSTRIES,                    §
                                   §
          Defendant.               §

MEMORANDUM OPINION
and
ORDER

Before the court for decision is the (1) motion filed
October 1, 2013, by the Estate of Rebecca Breaux to alter or
amend the judgment of dismissal the court signed in this action
on September 3, 2013, and (2) the motion for substitution of
party under Fed. R. Civ. P. 25(a)(1) filed October 15, 2013, by
Keva Nuckols Sampson, a/k/a Keva Renae Nuckols, Independent
Executrix of the Estate of Rebecca Louise Breaux.  After having
considered such motions, related responses and replies, evidence
received at the hearing conducted October 29, 2013, the entire
file in the above-captioned action, and pertinent legal
authorities, the court has concluded that both motions should be
denied.

I.

## Background and Pertinent Procedural History

This action, in which Rebecca Breaux ("Breaux") was plaintiff and ASC Industries ("ASC") is defendant, commenced on May 6, 2012, by the filing of Breaux's original complaint.  The attorneys signatory on the complaint were N. Jude Menes ("Menes") and Lurlia A. Oglesby ("Oglesby") of the Menes Law Firm.  Federal question subject matter jurisdiction was alleged.  Plaintiff alleged that she was discriminated against based on her age in connection with her employment by defendant, ASC.  On May 15, 2013, Breaux filed an amended complaint over the signature of Oglesby.

On May 24, 2013, Oglesby filed a document titled "Statement Noting Party's Death," stating:

> In accordance with Rule 25(a)(3) of the Federal Rules of Civil Procedure, the undersigned counsel notes the death during the pendency of this action of **Plaintiff, Rebecca Breaux.**

The filing was accompanied by a certificate of service noting service of the document on counsel for defendant on May 22, 2013.

On July 2, 2013, defendant filed two documents, one titled "Defendant ASC Industries' Motion to Exclude and/or For Sanctions and Brief in Support," and the other titled "Defendant ASC's Motion for Bifurcated Trial and Brief in Support."  Each was

2

accompanied by a certificate of service showing service of copies on Menes and Oglesby.   The certificate of conference accompanying each of the motions read in part: "[by] email dated June 25, 2013, Lee Oglesby advised that a probate had not been opened for Plaintiff."   Def.'s Mot. for Bifurcated Trial at 4.

On July 9, 2013, the court signed an order in which the court noted the filing on May 24 of the notice of plaintiff's death and by which the court stayed all further proceedings in the action until a motion for substitution of parties as contemplated by Rule 25(a) of the Federal Rules of Civil Procedure was filed.   On August 20, 2013, Keva Nuckols Sampson addressed a letter to the Menes Law Firm informing the firm that she no longer needed the firm's assistance.

On August 29, 2013, defendant filed a motion for leave to file a motion to dismiss, seeking dismissal pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.   It was accompanied by a certificate of conference signed by an attorney for defendant, Jill Malouf, reciting in part as follows:

> Lee Oglesby, Esq. (formerly of the Menes Law Firm) informed Ms. Malouf on August 29, 2013, that she intends to file an appearance in this case on behalf of Plaintiff's estate (and that she is opposed to Defendant's Motion).

Mot. for Leave at 2.  On August 29, 2013, Oglesby informed an attorney for defendant that "I have been retained to represent the estate."  Opp'n to Mot. to Am. or Alter, App. at 6.

The motion to dismiss, which was filed August 30, 2013, was based on the mandate of Rule 25(a)(1) of the Federal Rules of Civil Procedure that reads as follows:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party.  A motion for substitution may be made by any party or by the decedent's successor or representative.  <u>If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed</u>.

Fed. R. Civ. P. 25(a)(1) (emphasis added).  On September 3, 2013, the court ordered dismissal of this action pursuant to the directive of Rule 25(a)(1) inasmuch as no motion for substitution of parties had been made within ninety days after service on May 22, 2013, of the statement filed May 24, 2013, noting the death of Rebecca Breaux.  A final judgment of dismissal was signed September 3, 2013.

On that same date, a motion was filed by Menes Law Firm and Menes requesting permission to withdraw as attorneys of record for Estate of Rebecca Breaux.  The motion recited that Menes and Oglesby were co-counsel in the representation of plaintiff, that on August 20, 2013, the Probate Court of Tarrant County appointed Keva Nuckols Sampson as the Independent Executor of Rebecca

Breaux's Estate, and that Ms. Sampson had requested the Menes Law Firm and Menes to withdraw from the case, apparently because Ms. Sampson had engaged Oglesby, who no longer worked for the Menes Law Firm. The motion recited a belief that "Ms. Sampson has engaged Ms. Oglesby to continue representing the estate" and that "Ms. Oglesby already has the entire case file on Ms. Breaux in her possession." Mot. to Withdraw at 2.

On September 4, 2013, the court granted the motion to withdraw. In that order, the court incorrectly stated that the result of the withdrawal was that there was no attorney of record for the now-deceased plaintiff. In fact, Oglesby has been an attorney of record for plaintiff at all times since this action was filed in May 2012. So far as the court can tell, with one exception, Oglesby was the signatory on every document filed in the case on behalf of plaintiff. In a Joint Status Report filed November 9, 2012, Oglesby identified herself as lead counsel for plaintiff. In a telephone conference/hearing conducted May 14, 2013, Oglesby was the only counsel who appeared for plaintiff. On October 1, 2013, Oglesby filed her notice of appearance on behalf of Keva Nuckols Sampson, a/k/a Keva Renae Nuckols, Independent Executrix of the Estate of Rebecca Louise Breaux. On the same date, Oglesby filed on behalf of the estate of Rebecca

Breaux a motion to amend or alter the September 3, 2013 order of dismissal.

On October 8, 2013, defendant filed its opposition to the motion to amend or alter judgment.  On October 15, 2013, Oglesby replied to defendant's opposition, and at the same time filed on behalf of Keva Nuckols Sampson, a/k/a Keva Renae Nuckols, Independent Executrix of the Estate of Rebecca Louise Breaux, a motion asking that Ms. Sampson in her representative capacity be substituted as the named plaintiff in this action.  The motion for substitution recited that the movant was duly appointed as independent administratrix of the Estate of Rebecca Louise Breaux on August 20, 2013.  On October 24, 2013, defendant filed its opposition to the motion for substitution.  On October 24, 2013, Oglesby filed a Proof of Service consisting of a declaration by Daryl Richardson that on October 24, 2013, he personally served on Keva Nuckols Sampson, a/k/a Keva Renae Nuckols, Independent Executrix of the Estate of Rebecca Louise Breaux, a copy of the October 15, 2013 motion for substitution and other items.

On October 29, 2013, the court conducted a hearing on the motion to alter or amend judgment of dismissal and the motion for substitution.

II.

## The Ground of the Motion to Alter or Amend
## Judgment of Dismissal, and Defendant's Response

The sole ground of the motion to alter or amend judgment of dismissal was that the dismissal is not authorized because there was not compliance with the service requirement of Rule 25(a)(3) of the Federal Rules of Civil Procedure more than ninety (90) days prior to the judgment of dismissal.  According to the movant, "[t]he 90-day period [contemplated by Rule 25(a)(1)] begins to run when the statement noting the death has been properly served on a nonparty" and "[i]n this case, decedent's executrix is a nonparty and the statement noting death was to be served on her pursuant to Rule 4 in order to trigger the 90-day substitution period."  Mot. to Alter or Amend at 3.  The movant alleged that "[i]n essence, the notice of statement of death was a nullity."  Id.

Defendant opposed the motion to alter or amend on the ground that Oglesby was representing the estate of Rebecca Breaux before the motion to dismiss was filed and could have made a motion for substitution of parties before the court ordered plaintiff's claims against defendant dismissed.

III.

Information Developed at the Hearing

At the hearing conducted October 29, 2013, on the motion to alter or amend judgment of dismissal and the motion for substitution, testimony was taken from Keva Nuckols Sampson ("Sampson"), Oglesby, and James Wilson ("Wilson"), the attorney who handled the probate of Breaux's last will and testament. In potentially pertinent part, their testimony was as follows:

A.   Sampson's Testimony

Sampson was Breaux's only child. Her mother, who died as a result of being struck as a pedestrian by a motor vehicle on May 21, 2013, left a will, which designated Sampson as executrix of her mother's estate. They searched her mother's entire house in an unsuccessful effort to find the original of the will after her mother's death. Sampson had a copy of the will in her safe.

The will was admitted to probate on August 20, 2013, as a will not produced in court. Sampson, Wilson, who represented her in the probate, and her two uncles, who were witnesses to her mother's signature, were present at the hearing.

She identified as an exhibit the inventory, appraisement, and list of claims pertaining to her mother's estate, which she signed. The asset shown on the document as "possible work-related personal injury cause of action," Hr'g Ex. 13 at second

8

page, has reference to her mother's lawsuit against ASC.  The inventory, appraisement, and list of claims also shows as an asset a possible wrongful death cause of action, which has reference to a possible lawsuit arising from her mother's death. Oglesby has represented her in connection with the wrongful death claim since sometime in September 2013.

Sampson identified as an exhibit a copy of the contract between her and Oglesby related to Oglesby's representation of Sampson in her mother's suit against ASC.  She signed the contract on September 11, 2013.  She did not receive between her mother's death and September 11, 2013, a statement noting her mother's death.

She identified as an exhibit the motion for substitution of party under Rule 25, which was served on her by a gentleman in Grand Prairie.  Oglesby did not send her a copy of the motion when it was filed; however, Oglesby did tell her before it was filed that she was going to file such a motion.

According to Sampson, she first met Oglesby around September 2013.  Her first conversation with Oglesby was when she called Oglesby in September, 2013.  Before that, she had never talked to Oglesby.  She did not meet Oglesby during the time Oglesby was providing representation to her mother.

She found out that Oglesby had left the Menes Law Firm through her Aunt Charlotte, who is married to one of the witnesses.  When she heard from her Aunt Charlotte that Oglesby had left the Menes Law Firm, she told the law firm that she did not want anyone else dealing with her mother's case because her mother had dealt with Oglesby personally and that was who she wanted to handle the case.  Oglesby never told her before September 2013 about any deadline to make any appearance or to do anything in her mother's lawsuit.

Upon prompting from Oglesby on redirect examination, Sampson testified that she did meet Oglesby "for a short minute" at her mother's funeral.  Draft Tr. of October 29, 2013 Hr'g at 25.

B.   Oglesby's Testimony

Oglesby said that she no longer was working at the Menes Law Firm when Breaux died.  She discussed with Sampson sometime in May 2013 that she had left the Menes Law Firm and that if Sampson wanted her to continue with the case, as Sampson had indicated to her she did, Sampson would have to sign another contract with Oglesby.  That conversation was separate from the conversation she had with Sampson at Breaux's funeral.

She did not tell Sampson she was filing a notice in the lawsuit that her mother had died.  She cannot explain why she did not tell Sampson about the filing of the notice.  When she filed

10

the notice of Breaux's death, she was acting as attorney for the deceased plaintiff. She filed a notice pursuant to Rule 25 of the Federal Rules of Civil Procedure. She read the rule before she filed it and saw what it said about serving the notice on different people. She did not comply with the requirement that she serve a nonparty because there was no nonparty at that point. When asked if she checked with Sampson to find out who would be the executor of the will, if a will were to be admitted to probate, she said that she did not do so because she did not think it was necessary. She testified on this subject:

> THE COURT: Don't you think that defendant is entitled to rely on the notice in conducting its affairs and assume -- is entitled to assume that the lawyer who files the notice will do what the rule requires that lawyer to do?

> MS. OGLESBY: Yes, but I don't believe that the rule required me to serve the nonparty at that time. I'm not stating that the statement noting death may have been gratuitously filed. It may have. It may have been inappropriately filed. That may have happened as well. But under the rules, the nonparty had to be served. I did not serve the nonparty.

Draft Tr. of October 29, 2013 Hr'g at 40-41.

When she saw Sampson at Breaux's funeral, she did not discuss any legal matters. At that point, she was no longer with the Menes Law Firm, and she felt that it was inappropriate for her to discuss anything with Sampson regarding the lawsuit.

C.   <u>Wilson's Testimony</u>

Wilson is the lawyer who handled the probate of Breaux's will as a will that could not be produced in court.  He identified one of the exhibits as a copy of the copy of the will they used to obtain the probate.  The application for probate was filed with the probate clerk's office in Tarrant County on July 8, 2013.

About a week after Breaux's death, Mike Harvey ("Harvey"), one of his good friends, came to him and asked if he could probate the will, and he agreed to do so.  Harvey told him that he had a copy of the will.  Wilson responded that it would be best if they could find the original will.

Wilson discussed the problems they encountered in trying to find the original will.  Breaux's house was a complete disaster.  They wound up getting a dumpster and throwing everything away.  They literally had to clean out the entire house to try to find the will, which had disappeared.  He explained what he meant by saying that the house was completely cluttered.  Breaux was addicted to drugs, and her house was a drug house.  The house looked like nobody took care of it.  One of their problems was that there was a gentleman who had been there a couple of nights who decided, after Breaux's death, that he and Breaux were common law, a position the man maintained until he found out that Breaux

12

did not have any money, at which time the man disappeared and
they have not heard from him since.

They waited as long as they did, until July 8, to file the
application for probate because for the first two or three weeks
they were trying to find the original will, and then they had the
issue as to whether the gentleman who stayed in the house was
Breaux's common law husband, and they were trying to resolve that
issue before they sought probate of a copy of the will.  Breaux
had given two or three people a copy of her will.  Another factor
that entered into a delay of actual admission of the will to
probate was that after the application for probate was filed they
had difficulty finding a time when the witnesses who would have
to testify could be off and attend a hearing.

He explained that the reason he described in the inventory,
appraisement, and list of claims a possible work-related personal
injury cause of action as a pending lawsuit was because he knew
nothing about the lawsuit other than that there was a lawsuit
pending between Breaux and her former employer.

He first talked to Oglesby sometime near the end of June
2013.  One or both of Sampson's uncles had met with Oglesby, and
Oglesby was wanting to know how fast they could get the probate
going.  He told Oglesby about four days before he actually filed
the application for probate that they had just decided that they

13

were going to do it without the original will.  His occasion for
talking to Oglesby was that Kevin, an uncle, had asked him to
talk to Oglesby.  Oglesby had contacted Kevin and told him that
she needed to know how soon they could get the probate going.
Wilson filed the application for probate about four days after
Kevin told Wilson about his conversation with Oglesby.

When Wilson talked to Oglesby around the end of June, she
indicated that there was some need for speed in getting the
probate filed.  She told him that it needed to be done
immediately, but he does not recall that she gave him a time
element.  Oglesby told him that she wanted the application filed
the day they had their conversation.  She asked him how long it
would take to get the will probated after it was filed.  Oglesby
stressed to him that they had to get it done as quickly as
possible because of a time element, which had something to do
with the lawsuit Breaux had filed against her former employer.

IV.

Analysis

The information developed at the October 29, 2013 hearing
raised more questions than it answered.

Oglesby testified more than once at the hearing that she no
longer was working for the Menes Law Firm when Breaux died.  Yet,
the suggestion noting Breaux's death filed by Oglesby on May 24,

14

2013, shows that she was with the Menes Law Firm when she prepared and filed that statement.  The certificate of service shows that a copy of the statement was served on counsel for ASC on May 22, 2013, the day following Breaux's death.  Equally puzzling is the testimony given by Sampson and Oglesby concerning the nature and timing of their contacts with each other after Breaux's May 21, 2013 death.  Sampson testified more than once that the first time she ever talked to Oglesby was sometime around the first of September 2013 when she called Oglesby.  Sampson gave as her reason for calling Oglesby the following:

> Because I had just lost my mother, and I didn't even know where to begin any of this stuff that I'm going through.  I didn't know -- and that was my mother's lawyer, and she was the only one I had to talk to.

Draft Tr. of October 29, 2013 Hr'g at 21 (emphasis added).  When pointedly asked why she waited so long to call her mother's lawyer, Sampson said "[b]ecause I was going through a lot."  Id. at 20.  Not until she was prompted by Oglesby on redirect examination did Sampson acknowledge that she met Oglesby for a "short minute" at her mother's funeral.  In contrast, Oglesby told of an early communication or communications she had with Sampson, sometime in May 2013, when she advised Sampson that she had left the Menes Law Firm and that if she wanted Oglesby to

15

continue with the case she would have to sign another contract
with Oglesby.

The testimony given by Sampson and Oglesby at the hearing
appears to have been calculated to indicate that Oglesby did not
start representing Breaux's estate until Sampson, as executrix of
the estate, and Oglesby entered into an attorney-client contract
sometime in September 2013.  Such a suggestion would be
inconsistent with other parts of the record, such as Oglesby's
June 25, 2013 email that probate had not yet been opened, her
August 29, 2013 advice to counsel for ASC that she intended to
file an appearance in this action on behalf of Breaux's estate,
and her advice to counsel for ASC on August 29 that she had been
retained to represent the estate.  Supra at 3-4.  The court is
satisfied, and finds, that the conversations between Sampson and
Oglesby that caused Oglesby to become an attorney for Breaux's
estate in this action occurred in May 2013, and that both of them
viewed Oglesby to be the attorney for the estate in this action
from that point forward.

Oglesby obviously thought that her filing in May 2013 of the
statement noting Breaux's death started the running of the 90-day
time period for the filing of a motion to substitute.  The
statement said that it was filed "[i]n accordance with Rule
25(a)(3) of the Federal Rules of Civil Procedure."  Statement

Noting Party's Death.  Oglesby testified that she read Rule 25 before she filed the statement.

The court finds incredible any contention that Sampson was not made aware sometime in May 2013 of Oglesby's filing of the suggestion of Breaux's death or that Sampson was not told by Oglesby during that month that there was a 90-day time limit for the filing of a motion for substitution of parties.  The court infers, and finds, from the record that Sampson was informed of both of those things by Oglesby in May 2013.

Oglesby's sense of urgency in causing the suggestion of death to be made within what she undoubtedly perceived to be the 90-day time frame that started when she filed the suggestion of death is disclosed by Wilson's testimony.  He became involved in the probate of a copy of Breaux's will at the behest of Harvey, one of Sampson's uncles, about a week after Breaux's death. Harvey had a copy of Breaux's will at that time.  When one or both of Sampson's uncles met with Oglesby sometime before the end of June 2013, and Oglesby expressed a concern to the uncle or uncles as to how fast the probate of the will could be accomplished, Oglesby's concern was passed onto Wilson, who had a conversation with Oglesby near the end of June 2013.  When Wilson spoke with Oglesby, she told him that the probate of the will needed to be accomplished immediately.  Oglesby told Wilson that

17

she wanted the application for probate filed that day, and she wanted to know how soon he could get the will probated after the application was filed.  Oglesby stressed to him that they needed to get it done as quickly as possible <u>because of a time limit that had something to do with the lawsuit against Breaux's former employer</u>.

The court can infer, and finds, that if Sampson did not learn from Oglesby before the statement noting Breaux's death was filed on May 24, 2013, that it was being filed, Sampson learned from Oglesby sometime in May 2013 of the filing in this action of something noting her mother's death, and that when Sampson acquired that knowledge from Oglesby, she and Oglesby both knew that Sampson was designated in Breaux's will as the person to serve as the executrix of Breaux's estate, i.e., the person who would serve as the personal representative under Texas law of Breaux's estate.  Oglesby was acting on behalf of Sampson, Breaux's designated estate representative, in the filing of the May 2013 suggestion of death.

The court does not find credible the testimony given by Sampson or Oglesby that might be viewed to be inconsistent with the fact findings expressed above.  Obviously, Oglesby was aggressive in her plan to continue as the attorney for the plaintiff in this action once she learned of Breaux's death.

18

Presumably Oglesby made a full disclosure in May 2013 to Sampson, who she knew was designated to be the legal representative of Breaux's estate, of the facts pertinent and essential to the ultimate substitution of Sampson, as the representative of Breaux's estate, for the deceased Breaux as the plaintiff in this action.

Sampson's sole ground for her motions is that the 90-day period contemplated by Rule 25(a)(1) never started to run because the statement filed by Oglesby on May 24, 2013, noting Breaux's death was never served on a nonparty.  Oglesby's brief statement at the hearing of the only ground Sampson urges for grant of her motions was in its entirety as follows:

> THE COURT:  Does the -- either party wish to make a brief statement in support of whatever your position is at this time?
>
> MS. OGLESBY:  Yes, Your Honor.
>
> THE COURT:  Okay.
>
> MS. OGLESBY:  I would ask that the Court grant the motion to amend and alter the judgment based on clear error.  Under Rule 25(a)(3), the notice -- the statement noting the death of the decedent must be served on a nonparty.  That was not done in this case.  It's irrefutable.  It did not happen.
>
> Whether it was me filing the statement noting the death, or the defendant filing the statement noting the death, is irrelevant.  The rules require service.  It was not done.

> Based on that clear error, I would ask that the
> Court grant our motion to amend and alter the decision
> dismissing the case.
>
> With respect to the motion for substitution, I
> would ask that the Court grant that as well.  Ms.
> Sampson was the duly appointed independent executrix of
> her mother's estate and filed the necessary paperwork
> in a fashion that was reasonable considering the
> circumstances.
>
> Based on those reasons, I would ask that the Court
> grant both motions.

Draft Tr. of October 29, 2013 Hr'g at 42-43.

There was no request for an extension of the 90-day time

limit prescribed by Rule 25 for the filing of a motion to

substitute.

The part of Rule 25 on which Sampson relied reads as

follows:

> (3)  *Service*.  A motion to substitute, together
> with a notice of hearing, <u>must be served</u> on the parties
> as provided in Rule 5 and <u>on nonparties as provided in
> Rule 4</u>.  <u>A statement noting death must be served in the
> same manner</u>.  Service may be made in any judicial
> district.

Fed. R. Civ. P. 25(a)(3) (emphasis added).  Thus, the

determinative issue is whether the record of this action

establishes facts that would set the 90-day time period for the

filing of a motion for substitution into motion even though there

was not actual service on the personal representative of Breaux's

estate in a manner contemplated by Rule 4.

There are many court decisions on the subject of what triggers the 90-day time period, with varying outcomes, depending on the unique facts of each case. However, so far as the court can determine, there are only two Fifth Circuit opinions dealing with this subject. The first was Ransom v. Brennan, 437 F.2d 512 (5th Cir. 1971), followed thirty-three years later by Ray v. Koester, 85 F. App'x 983 (5th Cir. 2004) (per curiam).

In Ransom, the defendant in a breach-of-contract suit pending in a diversity case in a Texas federal court died. The defendant's death was suggested on the record by the attorney who was representing him at the time of his death. Within ninety days after the death was suggested on the record, the plaintiff moved to substitute the deceased defendant's executrix, a citizen of Alabama, for the deceased defendant. Thus, timeliness of the filing of the motion to substitute was not an issue. The motion to substitute was not served on the executrix, as a person not a party within the meaning of Rule 25(a)(1), in the manner provided by Rule 4 of the Federal Rules of Civil Procedure, although a copy of the motion to substitute was mailed to the defendant's attorney. Thereafter, the motion to substitute was granted. Several months later, the executrix, through the same attorney who had filed the suggestion of death, moved to dismiss because, inter alia, the court lacked personal jurisdiction over the

21

executrix.   The district court denied the motion, the case went to trial, and after the plaintiff won a jury verdict, the executrix appealed, asserting as an error the in personam jurisdictional issue.

The executrix, presumably the deceased defendant's widow, was appointed by an Alabama probate court, and apparently resided in Alabama, as had the deceased defendant.   A focus of the Fifth Circuit was on whether the district court had acquired in personam jurisdiction over the nonresident representative of the estate.   The district court appeared to have thought determinative of the personal jurisdiction issue that the deceased defendant had been validly served with process, and since there had been jurisdiction over him, it was unnecessary to reacquire jurisdiction over the substituted party, who merely represented the decedent's interest.   The Fifth Circuit held that the district court's view of the matter was error.

The Fifth Circuit concluded that the method contemplated by Rule 25 for acquiring jurisdiction over a nonparty had to be utilized for the nonparty to be subjected to the district court's jurisdiction.   In the course of reaching that conclusion, the court said that "Rule 4 service of the motion to substitute is for the purpose of acquiring personal jurisdiction over nonparties."   Ransom, 437 F.2d at 518.

The Fifth Circuit concluded that service in a manner contemplated by Rule 5 of the Federal Rules of Civil Procedure of the motion to substitute on the attorney for the nonresident executrix was not effectual solely by reason of his capacity as attorney. That led to the ultimate conclusion that the district court had no personal jurisdiction over the nonresident executrix of the deceased defendant, with the consequence that the jury verdict in favor of the plaintiff could not stand, even if the executrix had actual notice of the filing of the motion to substitute. On the latter point, the Fifth Circuit said, "[a]ssuming the executrix had . . . actual notice . . . , it would not operate as a substitute for process." Id. at 519.

The Fifth Circuit apparently assumed that the 90-day time period contemplated by Rule 25 was activated by the suggestion of death made on the record by the attorney for the deceased defendant. The court made a point of mentioning that the motion to substitute was timely filed. Id. at 520.

Timeliness of the filing of a suggestion of death was an issue presented to the Fifth Circuit in an unpublished opinion in Ray. The defendant in a damage suit growing out of a motor vehicle accident died after he answered the complaint. His attorney filed a suggestion of death two days after the death, which was served on the plaintiff on the same day it was filed.

Ninety days after the date of receipt by plaintiff of the suggestion of death, the defendant's attorney filed a motion to dismiss because the plaintiff had not filed a motion to substitute party within the ninety days contemplated by Rule 25(a)(1). The plaintiff responded by requesting a thirty-day extension to file the motion, which the district court granted. Thereafter, beyond the extended deadline, the plaintiff filed a response to the motion to dismiss, and later filed a document seeking information about who would be named the successor to the deceased defendant, but did not file a motion to substitute. The district court concluded that the suggestion of death began Rule 25's 90-day period, declined to grant a further extension of time, and dismissed the action.

The plaintiff in _Ray_ contended that the suggestion was not adequate to begin the 90-day period because it did not identify a proper party to succeed the deceased defendant. The Fifth Circuit held that the district court correctly concluded that Rule 25 does not require that the suggestion identify the proper party, and that the suggestion of death was sufficient to begin the 90-day period. The suggestion of death in _Ray_ was put of record two days after the defendant's death. Nothing in the _Ray_ opinion indicates that a representative of the deceased defendant's estate was in existence when the suggestion was

24

filed, or that the suggestion was served on anyone who was acting, or in the future would act, as a representative of the deceased defendant's estate.

Neither of the Fifth Circuit decisions supports the grant of either of the motions at issue here. Both of the decisions provide support for the proposition that the noting on the record by the attorney for the deceased party of a suggestion of death is sufficient to start the running of the 90-day time limit for the filing of a motion to substitute.

Moreover, there would not seem to be an issue here as to whether this court acquired personal jurisdiction over the executrix of Breaux's estate. In Ransom, a judgment was erroneously entered against the executrix of the deceased defendant's estate even though the court had not acquired in personam jurisdiction over her. In the instant action, no judgment was entered against the executrix of Breaux's estate. The executrix was not a party to the action when it was dismissed. If the dismissal coincidentally were to have an adverse effect on the executrix by reason of issue preclusion or claim preclusion were the executrix later to initiate a separate lawsuit, the situation would be no different than would exist in any case in which a nonparty to an action is adversely affected, by reason of privity or otherwise, by claim preclusion or issue

25

preclusion resulting from a judgment in the action.  Such a party
would have no ground to attack the judgment by reason of not
having been served with process in the action.

Because of the diversity of outcomes of Rule 25 decisions
from other jurisdictions, the court devotes little attention to
them here.  There is a collection in an annotation found at 105
A.L.R. Fed. 816 titled "Sufficiency of Suggestion of Death of
Party, Filed Under Rule 25(a)(1) of Federal Rules of Civil
Procedure, Governing Substitutions of Party After Death," and
another at 13 A.L.R. Fed. 830 titled "Applicable Time Limitations
for Service Upon Persons Not Parties, of Motion and Notice of
Motion for Substitution of Parties on Death Under Rule 25(a)(1)
of Federal Rules of Civil Procedure."

A case of interest is <u>Boyd v. El Paso Natural Gas Co.</u>, 126
F.R.D. 699 (D. N.M. 1989).  The motion before the court there was
for an extension of time in which to file for substitution of
plaintiff.  The motion was filed by counsel for the deceased
plaintiff, Giles A. Bays, who died on or about April 16, 1988.
On April 18, 1988, the defendant filed pursuant to Rule 25(a) a
suggestion of death, noting of record the fact and date of Bays's
death.  No motion for substitution of a proper party in place of
Bays was filed within ninety days after the suggestion of death
was placed of record.  The attorney who filed the motion for

26

extension gave as her ground for the extension that she simply had misread Rule 25 and, therefore, inadvertently failed to file a motion for substitution within the 90-day deadline.  The court concluded that the excuse given by the attorney did not constitute excusable neglect or reasonable basis for failure to comply with the requirements of Rule 25, with the consequence that the defendant's motion to dismiss was granted and the motion for extension of time was denied.  The interplay between Rule 25 and Rule 6, governing extensions of time, has been noted in several other decisions.  See, e.g., Jones Inlet Marina, Inc. v. Inglima, 204 F.R.D. 238, 240 (E.D.N.Y. 2001); Kasting v. American Family Mut. Ins. Co., 196 F.R.D. 595, 601 (D. Kan. 2000).

There was no motion for extension of time for the filing of the motion to substitute in the instant action.  This court agrees with the holding of the Second Circuit in Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470 (2d Cir. 1998), that the non-filing of a motion under Rule 6(b) to allow substitution out-of-time constitutes a waiver of such a request.  In Banerjee, the Second Circuit made the common sense observation that if there is an inability to identify the legal representative of a deceased person's estate, the proper course would be to file a Rule 6(b) motion to enlarge the time in which to file a motion for substitution rather than to simply allow the 90-day time limit to

27

expire.   Here, the absence of the filing of such a Rule 6(b) motion causes the court not to be required to evaluate whether there are circumstances in this case that would have authorized a Rule 6(b) extension.

For the reasons stated, the court has concluded that both of the motions under consideration should be denied.

### V.

### Order

Therefore,

The court ORDERS that the motion filed October 1, 2013, to alter or amend the judgment of dismissal the court signed in this action on September 3, 2013, and the motion for substitution of party under Rule 25(a)(1) filed October 15, 2013, be, and are hereby, denied.

SIGNED December 19, 2013.

_____
JOHN McBRYDE
United States District Judge